**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) | **KIM GRIZZLE, and** | |
| (2) | **TWILA GRIZZLE, as Co-Personal Representatives of the Estate of MALINDA YVONNE LINDLEY, deceased,** | |
| | **Plaintiffs,** | **Case No. 16-CV-254-SPS** |
| | **v.** | |
| (3) | **JOHN CHRISTIAN, in his official capacity as Sheriff of PONTOTOC COUNTY, OKLA.,** | |
| (4) | **ARNOLD SCOTT, Undersheriff of Pontotoc County, Okla.,** | |
| (5) | **MIKE SINNETT, Pontotoc County Justice Center Administrator,** | |
| (6) | **BRIAN ENGEL,** | |
| (7) | **THE CITY OF ADA, OKLA. ex rel. ADA POLICE DEPARTMENT,** | |
| (8) | **JEFFREY DALE BLACK,** | |
| (9) | **MALINDA JEAN SHAFFER,** | |
| (10) | **CHLOE BIANA SPATZ,** | |
| (11) | **LINDA SUE ROGERS,** | |
| (12) | **BRENDA KAY BROWN,** | |
| (13) | **CHELSEA DAWN STOUT,** | |
| (14) | **JOHNNY DALE WALKER,** | |
| (15) | **DAVID RAY BLANKENSHIP,** | |
| (16) | **CLINTON ALLEN COOPER,** | |
| (17) | **ADAM JOSHUA ROUDEN,** | |
| (18) | **KEVIN CHRISTIAN CLARK, and** | |
| (19) | **TAYLOR HAROLD WOOD.** | |

## FIRST AMENDED COMPLAINT

**COMES NOW**, the Plaintiffs, Kim Grizzle and Twila Grizzle, as Co-Personal

Representatives of the Estate of Malinda Yvonne Lindley, Deceased, by and through their

attorneys of record, and for their cause of action against the Defendants, allege and state as follows:

**THE PARTIES**

1.      Plaintiffs, Kim Grizzle and Twila Grizzle, are citizens and residents of Holdenville, Oklahoma, and the duly-appointed Co-Personal Representatives of the Estate of Malinda Yvonne Lindley.

2.      Defendant, Brian Engel, in his individual capacity and as employee of the City of Ada, is a police officer who is a resident and citizen of Ada, Oklahoma. (Defendant, Brian Engel, hereinafter referred to as "Engel".)

3.      Defendant, City of Ada, Okla. ex rel., City of Ada Police Department, is a municipal corporation organized and existing under the laws of the State of Oklahoma.

4.      Defendant, John Christian, in his official capacity, (hereinafter referred to as "Sheriff") is and was at all times relevant hereto the Sheriff of Pontotoc County, Oklahoma, and a resident and citizen of Ada, Oklahoma.

5.      Defendant, Arnold Scott, in his individual and official capacity, is and was at all times relevant hereto the undersheriff of Pontotoc County, Oklahoma, and is a resident and citizen of Ada, Oklahoma (Hereinafter referred to as "Undersheriff".)

6.      Defendant, Mike Sinnett, in his individual and official capacity, is and was at all times relevant hereto the Pontotoc County Justice Center Administrator and is a resident and citizen of Ada, Oklahoma (hereinafter referred to as "Administrator").

7.      Defendant, Jeffrey Dale Black, was a licensed practical nurse who was at all times relevant hereto employed at the Pontotoc County Justice Center (hereinafter referred to as "Nurse Black").

8.      Defendant, Malinda Jean Shaffer, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Shaffer").

9.      Defendant, Chloe Biana Spatz, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Spatz").)

10.     Defendant, Linda Sue Rogers, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Rogers").

11.     Defendant, Brenda Kay Brown, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Brown").

12.     Defendant, Chelsea Dawn Stout, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Stout").

13.     Defendant, Johnny Dale Walker, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Walker").

14.     Defendant, David Ray Blankenship, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Blankenship").

15.     Defendant, Clinton Allen Cooper, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Cooper").

16.     Defendant, Adam Joshua Rouden, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Rouden").

17.    Defendant, Kevin Christian Clark, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Clark").

18.    Defendant, Taylor Harold Wood, was a jailer on duty at the Pontotoc County Justice Center at times relevant hereto (hereinafter referred to as "Wood").

**JURISDICTION AND VENUE**

19.    This court has jurisdiction pursuant to 28 U.S.C. § 1331 as this matter involves questions of federal law pursuant to the United States Constitution and 42 U.S.C. § 1983.

20.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

**FACTS**

21.    On the morning of May 13, 2014, Malinda Lindley came into contact with Officer Engel in Pontotoc County, Oklahoma.

22.    The encounter with Officer Engel was video recorded.

23.    During the initial contact, Malinda Lindley was confused, disoriented, and unable to convey to Officer Engel where she had came from or was going.

24.    During the initial contact and before being arrested, Malinda Lindley repeatedly requested medical care.

25.    These requests were made directly to Officer Engel.

26.    During the initial contact and before being arrested, Malinda Lindley repeatedly requested water.

27.    On May 13, 2014, at approximately 6:11 a.m., Malinda Lindley was taken into custody, arrested, and transferred to the Pontotoc County Justice Center by Engel.

28.    Malinda Lindley was arrested for public intoxication.

4

29.     Malinda Lindley required assistance from City of Ada police officers in order to get into Officer Engel's vehicle.

30.     After being arrested, Malinda Lindley continued to request medical care and water from Officer Engel.

31.     Malinda Lindley had a significant medical condition at the time she was arrested by Officer Engel.

32.     At the time of Malinda Lindley's arrest on May 13, 2014 at approximately 06:11 a.m., Malinda Lindley was suffering severe Hypoglycemia, and brain injury, as well as being under the influence of alcohol and/or methamphetamine.

33.     For the entire time beginning when Malinda Lindley was taken into custody until the time of her death, Malinda Lindley was suffering a serious medical condition.

34.     For the entire time beginning when Malinda Lindley was taken into custody until the time of her death, Malinda Lindley's medical condition was such that a reasonable doctor or patient would find important and worthy of comment or treatment.

35.     For the entire time beginning when Malinda Lindley was taken into custody until the time of her death, Malinda Lindley's condition significantly affected her daily activities.

36.     For the entire time beginning when Malinda Lindley was taken into custody until the time of her death, Malinda Lindley's condition caused the existence of chronic and substantial pain.

37.     A delay in providing Malinda Lindley medical care caused her death and manifest deliberate indifference.

38.     At approximately 06:31 a.m. on May 13, 2014, Engel placed Malinda Lindley in the custody and care of the Pontotoc County Justice Center.

39.     Malinda Lindley was not booked in the Pontotoc County Justice Center on May 13, 2014, or at any time thereafter until her untimely death.

40.     The jailers instead placed Malinda Lindley in the "drunk tank" at the Pontotoc County Justice Center.

41.     The Oklahoma State Department of Health promulgates Jail Standards for the state of Oklahoma which are published in Title 310, Chapter 670 of the Oklahoma Administrative Code.

42.     Section 5-8 of Title 310, Chapter 670 of the Oklahoma Administrative Code provides:

> Adequate medical care shall be provided in a facility. The administrator shall develop and implement written policies and procedures for complete emergency medical and health care services. Policies and procedures shall include at least the following: (1) The administrator shall be responsible for the facility's medical services and shall develop, with the assistance of a designated medical authority, the facility's health care plan. Security restrictions shall be considered in the development of the plan, and any medical personnel included in the plan shall have their responsibilities regulated by written job descriptions. The health care plan shall cover at least the standards outlined in this section. (2) **Medical triage screening shall be performed on all prisoners immediately upon admission to the facility and before being placed in the general population or housing area. Those individuals who appear to have a significant medical or psychiatric problem, or who may be a suicide risk, shall be transported to the supporting medical facility as soon as possible**. They shall be housed separately in a location where they can be observed frequently by the staff at least until the appropriate medical evaluation has been completed.

> (emphasis added).

43.     No medical triage screening was performed on Malinda Lindley, or, in the alternative, if such a screening was performed it was performed in a grossly negligent manner and with deliberate indifference to the obvious medical needs of Malinda Lindley.

44.     The Sheriff and his Jailers knew or should have known that Malinda Lindley was at serious risk of harm, because her severe medical condition prevented Malinda Lindley from being processed into the jail like other non-severe medically ill detainees.

45.     Defendants accepted Malinda Lindley into the Pontotoc County Justice Center.

46.     The jailers guessed that Malinda Lindley was temporarily high on something when she was brought into the jail around 50 hours before her death.

47.     Malinda Lindley was not even processed through booking and intake at the Pontotoc County Justice Center in a manner like normal individuals without serious medical issues.

48.     Malinda Lindley repeatedly requested her constitutional right to medical treatment before her arrest, before she was placed in the jail, and before her wrongful death.

49.     Malinda Lindley was never allowed to appear in front of the Judge.

50.     Malinda Lindley suffered a significant medical or psychiatric condition while she was locked in the Pontotoc County Justice Center.

51.     Malinda Lindley was repeatedly denied adequate medical care from the time she was locked in the jail until she was rendered unresponsive.

52.     Defendants are ultimately responsible for the health and safety of detainees and for ensuring that health treatment is provided to detainees.

53.     For the next two days, Malinda Lindley would languish in the Pontotoc County Justice Center.

54.     From the time she was placed in the Pontotoc County Justice Center until her death, Malinda Lindley could be observed by the jailers on camera rolling around in the floor of her cell in various states of undress.

55.     From the time she was placed in the Pontotoc County Justice Center until her death, Malinda Lindley could be observed by the jailers on camera urinating and defecating in her clothes and cell, having lost control of her bladder and bowels.

56.     From the time she was placed in the Pontotoc County Justice Center until her death, Malinda Lindley could be observed by the jailers on camera rolling in her own feces in various states of undress.

57.     Around 8:30 a.m. on May 14, 2014, Malinda Lindley was moved from the "drunk tank" to another cell by jailers at the Pontotoc County Justice Center.

58.     After being removed from the "drunk tank" Malinda Lindley's condition did not improve and she continued to languish, lose control of her bladder, hide under the bunk, and roll around the floor of her cell in various states of undress.

59.     For example, at 8:41 a.m., less than fifteen minutes after being placed in the new cell, it can be observed on videos that Malinda Lindley has urinated and defecated in the floor of her cell and is moving erratically, with parts of her body coming into contact with her feces and urine.

60.     By May 15, 2014, at approximately 08:26 a.m., Malinda Lindley's condition had degrade to the point where she was nonresponsive in her jail cell and the staff of the Pontotoc County Justice Center finally intervened.

61.     Upon the emergency medical technician arriving at the jail, Malinda Lindley's glucose blood level was abnormal.

62.     Malinda Lindley suffered from pressure on her brain and other injuries which could have been treated by releasing the pressure if medical care had been provided.

63.     On May 15, 2014, at approximately 09:26 a.m., Malinda Lindley was pronounced dead.

64.     Defendants' denial of and refusal to provide adequate medical care to treat Malinda Lindley's medial condition caused Malinda Lindley's death.

65.     The Defendants violated Malinda Lindley's federal and state constitutional, statutory and regulatory rights by denying Malinda Lindley's adequate medical care.

66.     The Defendant's actions or failure to act violated the uniform Oklahoma Jail Standards.

67.     Defendants were aware that Malinda Lindley's medical needs were not being met in a timely manner.

68.     The Defendants were deliberately indifferent to serious risks to detainee's health and safety.

69.     The Defendants denied, delayed, or intentionally interfered with medical treatment which constitutes deliberate indifference to the medical needs of Malinda Lindley.

70.     A detainee must rely on jail authorities to provide for their medical needs and if authorities fail to do so, those needs will not be met.  In the worst cases, like Malinda Lindley, such a failure will actually produce physical torture or a lingering death.

71.     The following is incorporated by reference:  (1) Video of Ada police officer which shows the initial contact, arrest and transfer to the jail dated May 13, 2014; (2) Intergovernmental Service Agreement between Pontotoc County and City of Ada which was signed by the Board of County Commissioners Pontotoc County, Oklahoma; Pontotoc County Public Facilities Authority and City of Ada; Mayor; (3) Ada police officer Engel's Narrative Report dated 05/19/2014; (4) Mercy Ada EMS Patient Care Record, 2 pages, dated 05/15/2014; (5) Nurses Notes; (6) Report of Investigation by Office of the Chief Medical Examiner; (7) Report of Autopsy by Office of the Chief Medical Examiner; and (8) Videos of Malinda Lindley while in confinement at the Pontotoc County Justice Center.

72.     The failure to obtain adequate medical treatment and to treat Malinda Lindley's condition resulted in further significant injury, the unnecessary and wanton infliction of pain and her eventual death.

73.     Defendants failed to take appropriate actions to employ competent medical personnel at the Pontotoc County Justice Center to be available at the Pontotoc County Justice Center to evaluate incoming detainees and to tend to the medical needs of those that were in the custody of the Pontotoc County Justice Center.

74.     None of the Defendants ensured that Malinda Lindley received prompt medical attention after the various subjective and objective indications she was ill, including but not

limited to, after she first requested medical treatment at the time of admission or shortly thereafter, nor when her condition visibly deteriorated.

75.     After Malinda Lindley's condition deteriorated further, the Jailers and Nurse Black refused to call an ambulance and instead tried to call Defendant Sheriff because there was a verbal policy that no ambulance was to be called without prior approval and there was no policy to give detainees medical attention unless prior approval been given.

76.     Pontotoc County Justice Center policy required that the City of Ada was to be called before a City of Ada detainee could be taken for medical care.

77.     Malinda Lindley finally collapsed and lost consciousness.   Only then was emergency medical help summoned.  Only then did one or more of the Defendants attempt to render any medical aid to Malinda Lindley.

78.     EMS personnel found Malinda Lindley lying on the floor, unresponsive.

79.     One or more or all of the Defendants knew, or should have known, or in the exercise of reasonable care could have known, of the gradual deterioration of Malinda Lindley's medical condition during her detention, as described above.  Despite this knowledge, none of the Defendants took any action to provide medical treatment for Malinda Lindley prior to her total collapse.

80.     A pretrial detainee is entitled to Fourteenth Amendment substantive due process rights that are equivalent to the Eighth Amendment rights of a prisoner to be free from cruel and unusual punishment.

81.     The Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides inmates.

11

82.    Defendants at all times material to this claim, were acting under color of State Law in performing their duties.

83.    The Defendants acts and/or omissions were deliberately indifferent to Malinda Lindley's need for medical care in that they:

a.    Failed to know and understand the medical rights of detainees in the Pontotoc County Justice Center, relating to providing prompt and adequate medical treatment to Malinda Lindley and/or all detainees;

b.    Failed to employ competent medical personnel to tend to the needs of those under the custody and control of the Pontotoc County Justice Center, including but not limited to Malinda Lindley;

c.    Failed to perform any pre-admission medical screening of Malinda Lindley, or if one was performed, it was done in a grossly inadequate and deliberately indifferent manner;

d.    Failed to perform any prompt post-admission medical screening of Malinda Lindley, as an alternative to a pre-admission screening, or if one was performed, it was done in a grossly inadequate and deliberately indifferent manner;

e.    Failed to adequately communicate detainees' medical conditions between shifts on an ongoing and long-term basis, including but not limited to Malinda Lindley;

f.    Failed to properly observe detainees on any kind of minimum regular basis, or more frequently, as particular circumstances may have necessitated, including but not limited to Malinda Lindley;

g.      Ignored Malinda Lindley's repeated requests for help and medical attention for her serious medical need;

h.      Failed to adequately document Malinda Lindley's condition;

i.      Failed to recognize and respond in a timely manner to Malinda Lindley's medical problems;

j.      Allowed Malinda Lindley's medical condition to deteriorate to the point of collapse and imminent coma, followed by death;

k.      Failed to call for a physician or other qualified health professional to examine and provide treatment to Malinda Lindley prior to admission or immediately thereafter, even after she stated that she had a serious medical problem which required treatment;

l.      Failed to provide an examination and/or treatment by a physician or other qualified, licensed health professional the first time Malinda Lindley asked for help or otherwise indicated she was suffering from a medical problem and/or that her condition was deteriorating;

m.      Failed to provide an examination and treatment by a physician or other qualified, licensed health professional each and every time thereafter that Malinda Lindley asked for help or otherwise showed signs that she was suffering from a medical problem;

n.      Failed to personally observe Malinda Lindley with sufficient regularity to be able to adequately observe and respond to her medical needs in a timely manner;

o.      On an ongoing and long-term basis, failed to conduct at least once a day "medical inspections" of detainees, including but not limited to inspections of Malinda Lindley;

p.      Failed to properly document once-a-day "medical inspections," if any such inspections were made;

q.      Failed to recognize and understand the signs of potential low or high glucose levels, which require medical attention;

r.      Promulgated, created, implemented and/or possessed responsibility for the continued operation of a custom, policy or practice that caused Constitutional harm;

s.      Engaged in a long-term and ongoing custom and practice of disregarding the medical needs of detainees, including Malinda Lindley, in whole or in part because of the adverse effect on the Pontotoc County Justice Center's budget;

t.      Failed to know and understand the nature and extent of Malinda Lindley's Constitutional Right as a pretrial detainee to adequate medical attention, and to act in conformance with Constitutional standards; and

u.      Failed to restrain or protect Malinda Lindley from physical harm, including repeated self inflicted injury.

84.      The Defendants, by the above-described acts and/or omissions, whether intentional or negligent, willfully and wantonly ignored the obvious serious medical needs of Malinda Lindley, and were deliberately indifferent to Malinda Lindley's serious medical needs, were deliberately indifferent to a substantial risk of either serious injury to Malinda Lindley or her death, in direct violation of the Fourteenth Amendment to the Constitution of the United States.

85.      As a direct and proximate result of the above described Constitutional violations, Malinda Lindley suffered needlessly and died prematurely on May 15, 2014.

86.     Malinda Lindley suffered physical pain, torture, mental anguish and lingering wrongful death caused by being wrongfully denied medical care while detained in the Pontotoc jail.

87.     Malinda Lindley suffered the unnecessary and wanton inflection of pain.

88.     The above-described conduct of the Individual Defendants was motivated by an evil motive or intent, or by a reckless or callous indifference to the Constitutionally protected rights of Malinda Lindley, so that Plaintiffs are entitled to recover punitive damages from these Defendants.

89.     As a result and proximate result of the wrongful conduct of Defendants, as alleged herein, Plaintiffs are entitled to monetary damages for the death of Malinda Lindley in accordance with 42 U.S.C. § 1983, together with any applicable prejudgment and post-judgment interest.

90.     Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiffs are entitled to recover attorney's fees and costs for the causes of actions alleged under the Constitution and the Laws of the United States.

**Cause of Action One – Officer Engel – Claim for Relief Pursuant
to 42 O.S. § 1983, 1988**

91.     The allegations of paragraphs 1-90 are incorporated by reference.

92.     When he arrested Malinda Lindley on May 13, 2014, Officer Engel was acting under color of law as a police officer of the City of Ada.

93.     Pretrial detainees, such as Malinda Lindley, have a constitutional right to medical care when detained by police.

15

94.     A pretrial detainee enjoys at least the same constitutional protections pursuant to the due process clause of the 14th Amendment to the United States Constitution as a convicted criminal does pursuant to the 8th Amendment to the United States Constitution.

95.     On May 13, 2014, Malinda Lindley's constitutional right to medical care was clearly established.

96.     Malinda Lindley's need for medical care was so obvious that a lay person would easily recognize the necessity for a doctor's attention and a reasonable doctor would find her condition worthy of treatment.

97.     Malinda Lindley's medical condition immediately before and immediately after she was arrested was serious enough to require immediate medical treatment at a medical facility.

98.     Officer Engel failed to act despite his knowledge of a substantial risk of serious harm to Malinda Lindley as a result of her serious medical condition.

99.     Officer Engel's failure to act despite his knowledge of a substantial risk of serious harm exhibited his deliberate indifference to the serious medical needs of Malinda Lindley.

100.    Engel repeatedly violated Malinda Lindley's constitutional right to medical care by refusing Malinda Lindley's request for medical care which would have prevented Malinda Lindley's death.

101.    As a direct result of the unconstitutional actions of Officer Engel, Malinda Lindley endured physical, mental and emotion pain and suffering and death.

102.    As a result of the unconstitutional actions of Officer Engel, funeral and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and

died, her children suffered loss of financial support, grief, loss of companionship and parental

care, training, guidance, education and companionship from their mother.

### Cause of Action Two – City of Ada – Claim for Relief Pursuant to
### the Oklahoma Tort Claims Act

103.    The allegations of paragraphs 1-102 are incorporated by reference.

104.    A proper tort claim notice dated May 4, 2015, was served on the proper persons

pursuant to Oklahoma law.

105.    The tort claim was deemed denied on August 2, 2015.

106.    Plaintiffs filed their Petition in a timely manner.

107.    Officer Engel was acting at all times relevant hereto within the scope of his

employment of the Defendants.

108.    Malinda Lindley was arrested by Officer Engle and other officers of the Ada

Police Department for public intoxication.

109.    The employees of the City of Ada breached their duty by failing to provide

Malinda Lindley medical attention that would have prevented her death.

110.    The Defendant, City of Ada, ex rel. City of Ada Police Department, is responsible

for its employees actions or failure to act on the theory of *respondeat superior*.

111.    At all times relevant hereto, Officer Engel and the other officers of the Ada Police

Department were acting within their scope of employment.

112.    Officer Engle and the other officers of the Ada Police Department were negligent

and breached their duty to Malinda Lindley by denying her necessary medical care with caused

her significant injury, pain, and suffering and was a direct and proximate cause of her untimely

death.

113.    The City of Ada was directly negligent in failing to fulfill its duty to properly train its officers regarding providing medical care to arrested and/or detained individuals.

114.    As a result of the aforementioned negligence, funeral and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and died, and her children suffered loss of financial support, grief, loss of companionship and parental care, training, guidance, education and companionship from their mother.

**Cause of Action Three – City of Ada – *Bosh* Tort (Alternative
Cause of Action)**

115.    The allegations of paragraphs 1-114 are incorporated by reference.

116.    In the alternative, if Malinda Lindley was not actually under arrest but in protective custody or if 51 Okla. Stat. 155(6) provides immunity to the City of Ada from an action under the Oklahoma Governmental Tort Claims Act, an action is available pursuant to the Oklahoma Constitution as recognized by *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013).

117.    Oklahoma's Due Process Clause, Article 2, Section 7 of the Oklahoma constitution is coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart.

118.    Therefore, a pretrial detainee, such as Plaintiff, is entitled under the Oklahoma Constitution, pursuant to Okla. Const. Art. 2, § 7, to protection from the deliberate indifference of an officer who denies medical treatment needed to remedy a serious medical condition.

119.    Malinda Lindley's need for medical care was so obvious that a lay person would easily recognize the necessity for a doctor's attention.

120.    Malinda Lindley's medical condition immediately before and immediately after she was arrested was serious enough to require immediate medical treatment at a medical facility.

121.    Officer Engel and the other officers of the Ada Police Department failed to act despite their knowledge of a substantial risk of serious harm.

122.    Officer Engel's and the other officers of the Ada Police Department failure to act despite their knowledge of a substantial risk of serious harm demonstrate their deliberate indifference to the serious medical needs of Malinda Lindley.

123.    Engel and the other officers of the Ada Police Department repeatedly violated Malinda Lindley's constitutional right to medical care by refusing Malinda Lindley's request for medical care which would have prevented Malinda Lindley's death.

124.    As a direct result of the unconstitutional actions of Officer Engel and the other officers of the Ada Police Department, Malinda Lindley endured physical, mental and emotion pain and suffering and death.

125.    At all times relevant hereto, Officer Engel and the other officers of the Ada Police Department were acting within their scope of employment.

126.    As a result of the unconstitutional actions of Officer Engel and the other officers of the Ada Police Department funeral, and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and died, her children suffered loss of financial support, grief, loss of companionship and parental care, training, guidance, education and companionship from their mother.

## Cause of Action Four – Jailers– Claim for Relief Pursuant to 42
## O.S. § 1983, 1988

127.    The allegations of paragraphs 1-127 are incorporated by reference.

128.    Jailers Shaffer, Spatz, Rogers, Brown, Stout, Walker, Blankenship, Cooper, Rouden, Clark, and Wood (hereinafter collectively referred to as "Jailers") were all on duty at the Pontotoc County Justice Center on various shifts during the time that Malinda Lindley was detained there from May 13 to May 15, 2016.

129.    As a part of their duties Jailers performed jail checks, walk-throughs, head counts, provided hygiene items, provided food and water, retrieved food trays, and viewed video of the Malinda Lindley as well as observing her in person.

130.    Additionally, the Jailers, at various times, viewed Malinda Lindley as she rolled around in the floor of her cell in various states of undress, somtimes covered in or rolling in her own feces and urine, but did nothing to intervene or seek medical attention for her for a period of over forty-eight hours.

131.    A pretrial detainee enjoys at least the same constitutional protections pursuant to the due process clause of the 14th Amendment to the United States Constitution as a convicted criminal does pursuant to the 8th Amendment to the United States Constitution.

132.    On May 13, 2014, Malinda Lindley's constitutional right to medical care was clearly established.

133.    Malinda Lindley's need for medical care was so obvious that a lay person would easily recognize the necessity for a doctor's attention.

134.    Malinda Lindley's medical condition immediately before and immediately after she was confined in the Pontotoc County Justice Center was serious enough to require immediate medical treatment at a medical facility.

135.    The Jailers failed to act despite each Jailer having knowledge of a substantial risk of serious harm.

136.    The Jailers failure to act despite each Jailer having knowledge of a substantial risk of serious harm exhibited each Jailer's deliberate indifference to the serious medical needs of Malinda Lindley.

137.    The Jailers repeatedly violated Malinda Lindley's constitutional right to medical care by refusing Malinda Lindley's request for medical care which would have prevented her death.

138.    As a direct result of the unconstitutional actions of each Jailer, Malinda Lindley endured physical, mental and emotion pain and suffering and death.

139.    As a result of the unconstitutional actions of each Jailer funeral and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and died, her children suffered loss of financial support, grief, loss of companionship and parental care, training, guidance, education and companionship from their mother.

### Cause of Action Five – Nurse Jeffrey Dale Black– Claim for Relief Pursuant to 42 O.S. § 1983, 1988

140.    The allegations of paragraphs 1-139 are incorporated by reference.

141.    Nurse Jeffrey Dale Black was on duty at the Pontotoc County Justice Center during certain times that Malinda Lindley was detained there from May 13 to May 15, 2014.

142.    On information and belief, it is a part of the duties of Nurse Black to perform medical triage assessments and to determine if and when inmates should be taken for medical treatment.

143.    Nurse Black observed and had interactions with Malinda Lindley during her confinement from May 13 to May 15, 2014.

144.    Nurse Black viewed Malinda Lindley as she rolled around in the floor of her cell in various states of undress, sometimes covered in or rolling in her own feces and urine, but did nothing to intervene or seek medical attention for her for a period of over forty-eight hours.

145.    A pretrial detainee enjoys at least the same constitutional protections pursuant to the due process clause of the 14th Amendment to the United States Constitution as a convicted criminal does pursuant to the 8th Amendment to the United States Constitution.

146.    On May 13, 2014, Malinda Lindley's constitutional right to medical care was clearly established.

147.    Malinda Lindley's need for medical care was so obvious that a lay person would easily recognize the necessity for a doctor's attention, much less a trained Licensed Practical Nurse.

148.    Malinda Lindley's medical condition when she was confined in the Pontotoc County Justice Center was serious enough to require immediate medical treatment at a medical facility and this condition continued until her death.

149.    Nurse Black failed to act despite having knowledge of a substantial risk of serious harm.

150.    Nurse Black's failure to act despite having knowledge of a substantial risk of serious harm exhibited his deliberate indifference to the serious medical needs of Malinda Lindley.

151.    Nurse Black repeatedly violated Malinda Lindley's constitutional right to medical care by refusing Malinda Lindley's request for medical care which would have prevented her death.

152.    As a direct result of the unconstitutional actions Nurse Black, Malinda Lindley endured physical, mental and emotion pain and suffering and death.

153.    As a result of the unconstitutional actions of Nurse Black funeral and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and died, her children suffered loss of financial support, grief, loss of companionship and parental care, training, guidance, education and companionship from their mother.

**Cause of Action Six – Jail Administrator Mike Sinnett–**
**Claim for Relief Pursuant to 42 O.S. § 1983, 1988**

154.    The allegations of paragraphs 1-153 are incorporated by reference.

155.    Oklahoma Jail Standards require that adequate medical care shall be provided in a jail and the jail administrator shall develop and implement written policies and procedures for complete emergency medical and health care services.

156.    The Pontotoc County Justice Center policy on the admission of inmates to the facility used at the time Malinda Lindley was incarcerated there was in direct conflict with the Oklahoma Jail Standards.

157.    The Oklahoma Jail Standards provide that medical triage screening shall be performed on all prisoners immediately upon entering the facility and before being placed in a

cell.  Individuals who appear to have a significant medical or psychiatric problem, or who may be a suicide risk, are required to be transported to the supporting medical facility as soon as possible.

158.    The Pontotoc County Justice Center Administrator was Mike Sinnett, at all times relevant to this Complaint.

159.    Administrator, along with Sheriff Christian, promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused Malinda Lindley constitutional harm.

160.    Administrator, along with Sheriff Christian, was personally involved in the creation promulgation, implementation, and utilization of a policy which directly caused Malinda Lindley's untimely death and the unconstitutional deprivation of medical care.

161.    Additionally, Administrator, along with Sheriff Christian, exercised control and direction over the policies at the Pontotoc County Justice Center for medical triage of detainees and for obtaining medical care for incarcerated persons.

162.    Administrator, along with Sheriff Christian, was aware of dangerous jail conditions that were substantially likely to result in constitutionally deficient medical care for seriously ill detainees and set in motion a series of events that he knew or reasonably should have known would cause others to deprive Malinda Lindley and those similarly situated of her constitutional rights.

163.    Administrator, along with Sheriff Christian, acted with deliberate indifference to the occurrence of constitutional violations for the denial of medical care to ill persons in the Pontotoc County Justice Center.

164.    Malinda Lindley's, detainee, death was caused by those dangerous conditions.

165.    Administrator, along with Sheriff Christian was aware that detainees and prisoners were not being seen in a timely manner by medical personnel.

166.    The Administrator, along with Sheriff Christian, are liable under §1983 for failing to adequately monitor Malinda Lindley and for failing to provide Malinda LIndley with constitutionally-mandated medical care.

167.    The Defendants constitutional rights violations include: (1) Malinda LIndley not being monitored; (2) by virtue of the Pontotoc County Justice Center's design, Malinda LIndley could not have been adequately monitored once in the cell; and (3) the Sheriff and the Administrator had actual knowledge that the deficiencies in medical care for seriously ill detainees like Malinda Lindley were serious enough to amount to constitutional violations.

168.    The conditions at the Pontotoc County Justice Center make it extremely difficult, if not impossible, for detention staff to be able to provide adequate safety and security checks of the detainees.

169.    The crowded conditions tax numerous areas of Pontotoc County Justice Center's operations and create circumstances that contribute to unconstitutional conditions.

170.    The Jailers have little time to actually monitor detainees and detainees are often left unsupervised for extended periods of time.

**Cause of Action Seven – Sheriff John Christian– Claim for
Relief Pursuant to 42 O.S. § 1983, 1988**

171.    The allegations of paragraphs 1-170 are incorporated by reference.

172.    The Sheriff violated his statutory duty to provide medical care, and all necessities for the comfort and welfare of Malinda Lindley.  This duty underlies the Sheriff's liability as the supervisory authority.

173.    Defendant, Sheriff, was, at all times relevant hereto, responsible for ensuring the safety and well-being of individuals detained in the Pontotoc County Justice Center over the Pontotoc County Justice Center.

174.    Defendant, Sheriff, was at all times relevant hereto, responsible for providing appropriate medical and mental health care and treatment to all persons detained in the Pontotoc County Justice Center.

175.    There was system-wide failure by the Defendants to provide adequate medical care to pretrial detainees with emergent health care needs.  The sheriff knowingly permitted this failure to continue despite advance notice that such failures were likely to lead to serious injury or death.

176.    Sherriff failed to train his employees to recognize serious medical conditions including closed head injuries, and to provide constitutionally required observation, triage, testing and medical care.

177.    The Defendant, Sheriff, is liable pursuant to 42 U.S.C. § 1983, for failing to train in the procedures to be followed when serious medical or mental conditions are encountered. This inadequacy was so likely to result in the violation of a detainee's constitutional rights, that the sheriff was deliberately indifferent to the need for additional training.

178.    The deficiency in training was both deliberately indifferent to Malinda Lindley's constitutional rights and the moving force behind her injury and death.

179.    Defendants, Sheriff and County, are and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, enforcing the rules, regulations, policies, practices, procedures, and/or customs for the Pontotoc County Sheriff's Office and the Pontotoc County Justice Center.

180.    The Defendant, Sheriff, is the final policymaker adopted a policy or knowingly acquiesced in a custom which was the moving force for the violation of Malinda Lindley's constitutional right.

181.    Sheriff had a policy or custom by which detainees, including Malinda Lindley, were denied their constitutional right to medical care.

182.    Pontotoc County is liable on the basis that the sheriff is a final policymaker with regard to the Pontotoc County Justice Center.

183.    The Sheriff is liable under 42 U.S.C. § 1983 because he established or utilized an unconstitutional policy or custom or breached a duty imposed by state or local law which caused the constitutional violation.

184.    The Sheriff has the duty for ensuring that the medical needs of the prisoners and pretrial detainees are met 57 Okla. Stat. § 52; 74 Okla. Stat.  §192; 57 Okla. Stat.  § 47; 19 Okla. Stat.  § 513.

185.    Oklahoma Jail Standards provide for a "bare minimum" of care required for detainees.

186.    The procedures and customs in operation at the Defendant's Pontotoc County Justice Center before and at the time of Malinda Lindley's death did not comply with Oklahoma Jail Standards.

187.    The Defendant's Jail's operational practices and customs were in direct conflict with the Oklahoma Jail Standards.

188.    Sheriff is responsible for establishing and maintaining an unconstitutional policy, custom, and practice of deficient medical health screening, evaluation, and treatment for jail detainees like Malinda Lindley, and that such practices and treatment of Malinda Lindley constitute deliberate indifference to Malinda Lindley's health and safety.

189.    The policies, practices, procedures, and/or customs created by Sheriff violated Malinda Lindley's federal constitutional and state rights.

190.    There are longstanding, systemic deficiencies in the medical and mental health care provided to detainees at the Pontotoc County Justice Center.  Sheriff and County have long known of these systemic deficiencies and the substantial risks to inmates/detainees like Malinda Lindley, but have failed to take reasonable steps to alleviate those deficiencies and risks.

191.    The violation of Malinda Lindley's federal rights for medical treatment for her serious medical needs was in furtherance of and consistent with: (a) policies, customs and/or practices which Sheriff promulgated, created, implemented or possessed responsibility for the continued operation of; and (b) policies, customs and/or practices which Sheriff had responsibility for implementing and which Pontotoc County Sheriff's Office and County assisted in developing.

192.    The Defendants' actions constitute deliberate indifference to Malinda Lindley's serious life threatening medical needs.

193.   On information and belief, Sheriff Christian observed and had interactions with Malinda Lindley during her confinement from May 13 to May 15, 2014.

194.   On information and belief, Sheriff Christian viewed Malinda Lindley as she rolled around in the floor of her cell in various states of undress, sometimes covered in or rolling in her own feces and urine, but did nothing to intervene or seek medical attention for her for a period of over forty-eight hours.

195.   A pretrial detainee enjoys at least the same constitutional protections pursuant to the due process clause of the 14th Amendment to the United States Constitution as a convicted criminal does pursuant to the 8th Amendment to the United States Constitution.

196.   On May 13, 2014, Malinda Lindley's constitutional right to medical care was clearly established.

197.   Malinda Lindley's need for medical care was so obvious that a lay person would easily recognize the necessity for a doctor's attention.

198.   Malinda Lindley's medical condition when she was confined in the Pontotoc County Justice Center was serious enough to require immediate medical treatment at a medical facility and this condition continued until her death.

199.   Sheriff Christian failed to act despite having knowledge of a substantial risk of serious harm.

200.   Sheriff Christian's failure to act despite having knowledge of a substantial risk of serious harm exhibited his deliberate indifference to the serious medical needs of Malinda Lindley.

201.    Sheriff Christian repeatedly violated Malinda Lindley's constitutional right to medical care by refusing Malinda Lindley's request for medical care which would have prevented her death.

202.    As a direct result of the unconstitutional actions of Sheriff Christian, Malinda Lindley endured physical, mental and emotion pain and suffering and death.

203.    As a result of the unconstitutional actions of Sheriff Christian funeral and burial expenses were incurred, Malinda Lindley suffered physical and mental pain and anguish and died, her children suffered loss of financial support, grief, loss of companionship and parental care, training, guidance, education and companionship from their mother.

### Cause of Action Eight – Undersheriff Arnold Scott– Claim for Relief Pursuant to 42 O.S. § 1983, 1988

204.    The allegations of paragraphs 1-203 are incorporated by reference.

205.    At all times material hereto, Defendant Arnold Scott was an officer employed by the Pontotoc County Sheriff's Department to perform, and did perform supervisory, operational, administrative and policy making functions in the Pontotoc County Justice Center. At all times material hereto, Arnold Scott was also employed to supervise individuals under the custody and control of Pontotoc County at the Pontotoc County Justice Center.

206.    Oklahoma Jail Standards require that adequate medical care shall be provided in a jail and the jail administrator shall develop and implement written policies and procedures for complete emergency medical and health care services.

207.    The Pontotoc County Justice Center policy on the admission of inmates to the facility used at the time Malinda Lindley was incarcerated there was in direct conflict with the Oklahoma Jail Standards.

208.    The Oklahoma Jail Standards provide that medical triage screening shall be performed on all prisoners immediately upon entering the facility and before being placed in a cell.  Individuals who appear to have a significant medical or psychiatric problem, or who may be a suicide risk, are required to be transported to the supporting medical facility as soon as possible.

209.    Scott was the undersheriff of Pontotoc County, at all times relevant to this Complaint.

210.    Scott, Administrator, and Sheriff Christian promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused Malinda Lindley constitutional harm.

211.    Scott, Administrator, and Sheriff Christian, were personally involved in the creation promulgation, implementation, and utilization of a policy which directly caused Malinda Lindley's untimely death and the unconstitutional deprivation of medical care.

212.    Scott, Administrator, and Sheriff Christian, exercised control and direction over the policies at the Pontotoc County Justice Center for medical triage of detainees and for obtaining medical care for incarcerated persons.

213.    Scott, Administrator, and Sheriff Christian were aware of dangerous jail conditions that were substantially likely to result in constitutionally deficient medical care for seriously ill detainees and set in motion a series of events that he knew or reasonably should have known would cause others to deprive Malinda Lindley and those similarly situated of her constitutional rights.

214.    Scott, Administrator, and Sheriff Christian acted with deliberate indifference to the occurrence of constitutional violations for the denial of medical care to ill persons in the Pontotoc County Justice Center.

215.    Malinda Lindley's death was caused by those dangerous conditions.

216.    Scott, Administrator, and Sheriff Christian were aware that detainees and prisoners were not being seen in a timely manner by medical personnel.

217.    Scott, Administrator, and Sheriff Christian are liable under 42 U.S. § 1983 for failing to adequately monitor Malinda Lindley and for failing to provide Malinda LIndley with constitutionally-mandated medical care.

218.    The Defendants constitutional rights violations include: (1) Malinda LIndley not being monitored; (2) by virtue of the Pontotoc County Justice Center's design, Malinda LIndley could not have been adequately monitored once in the cell; and (3) the Sheriff and Scott had actual knowledge that the deficiencies in medical care for seriously ill detainees like Malinda LIndley were serious enough to amount to constitutional violations.

**WHEREFORE**, premises considered, the Plaintiffs pray the Court for Judgment against the Defendants, and award them compensatory damages in excess of $10,000.00, prejudgment and post judgment interest, attorneys' fees incurred and costs, and any other relief deemed just and equitable.

Respectfully submitted,

/s Eric Grantham

Eric Grantham, OBA # 22156
Russell Uselton, OBA #10146
*Stipe Law Firm*
343 East Carl Albert Pkwy

P. O. Box 1369
McAlester, Oklahoma 74502
(918) 423-0421
(918) 423-0266 (facsimile)
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2016, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

David W. Kirk
Robert Ray Jones, Jr.
Lytle, Soule & Curlee, P.C.
119 North Robinson, Suite 1200
Oklahoma City, Oklahoma  73102
*Attorneys for Defendants, Brian Engel and The City of Ada*

Wellon B. Poe
Collins, Zorn & Wagner, P.C.
429 NE 50th, Second Floor
Oklahoma City, Oklahoma  73105
*Attorney for Defendants, Board of County Commissioners of Pontotoc County; Mike Sinnett, Pontotoc County Justice Center Administrator; John Christian, as Sheriff of Pontotoc County; and Arnold Scott, Undersheriff for Pontotoc County Justice Center.*

/s Eric Grantham

_____
Eric Grantham, OBA # 22156