# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

KIM GRIZZLE and TWILA GRIZZLE, )
as co-personal representatives of the )
estate of Malinda Yvonne Lindley, )
deceased, )
            )
         Plaintiffs, )
            )
v. )      **Case No. CIV-16-254-SPS**
            )
JOHN CHRISTIAN, as Sheriff of )
Pontotoc County; and MIKE SINNETT, )
            )
         Defendants. )

## OPINION AND ORDER

This case arises out of Malinda Yvonne Lindley's arrest and subsequent treatment at the Pontotoc County Justice Center in Ada, Oklahoma. Ms. Lindley, who is now deceased, is represented in this case by co-personal representatives Kim Grizzle and Twila Grizzle (collectively, "Plaintiffs"). The Plaintiffs sued a number of individuals and entities including John Christian, in his official capacity as the Sheriff of Pontotoc County, Oklahoma, and Mike Sinnett, the Pontotoc County Justice Center Administrator and Undersheriff, who are the only parties remaining in this case. As to these Defendants, Plaintiffs alleged claims pursuant to 42 U.S.C. §§ 1983 and 1988, and Defendants Christian and Sinnett have now each filed motions for summary judgment. For the reasons set forth below, the Court finds that Defendant John Christian's Motion for Summary Judgment and Brief in Support [Docket No. 227] should be GRANTED IN PART AND DENIED IN

PART and Defendant Mike Sinnett's Motion for Summary Judgment and Brief in Support [Docket No. 229] should be GRANTED.

## I. Procedural History

The Plaintiffs filed this case on May 12, 2016, in Oklahoma state court in Pontotoc County, Case No. CJ-2016-85, naming a number of Defendants.[1]  This case was removed to this Court on June 15, 2016.  In their First Amended Complaint, Plaintiffs alleged eight causes of action against the various Defendants, but only the sixth and seventh implicate Defendants Christian and Scott (the only two remaining Defendants).  The Plaintiffs' Seventh Cause of Action is raised pursuant to §§ 1983 and 1988 as to Defendant Christian, alleging violations of the constitutional right to medical care based on a policy or custom, and failure to train.  The Sixth Cause of Action is raised pursuant to §§ 1983 and 1988 as to Defendant Sinnett, alleging violations of the constitutional right to medical care.

## II. Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] "State court docket sheets are public documents of which the Court may take judicial notice." *White v. City of Tulsa, Okla.*, 2013 WL 4784243, at *1 n.2 (N.D. Okla. Sept. 5, 2013), *citing United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012).

325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

### III. Factual Background

The undisputed facts reflect that shortly after 6:00 a.m. on May 13, 2014, officers with the Ada, Oklahoma Police Department responded to a call and Officer Brian Engel arrested Malinda Lindley, who appeared to be intoxicated. Based on the video of her arrest, she repeatedly asked for water, and on at least one occasion she asked for medical attention. *See* Docket No. 243, Ex. 1, Body Camera Video from Brian Engel. Upon her arrest, Officer Engel took her to the Pontotoc County Justice Center ("the Jail").

Upon arrival at the Jail, Ms. Lindley was not booked into the Jail and did not go through intake, but was placed in a padded cell due to her intoxication. Nurse Jeffrey Black saw Ms. Lindley upon her arrival at the Jail, believed she was intoxicated, and escorted her to the padded cell. He also took her water later that afternoon. Defendant Sinnett, the Jail Administrator, observed Ms. Lindley while she was in the padded cell, and believed her to be "high." Although there is no running water in the padded cell, staff provided some water to Ms. Lindley while she was in there, as well as a tray of food. While in the padded cell, Ms. Lindley appeared to defecate on the tray of food and in other spots of the cell.

The following day, on May 14, 2014, around 8:00 a.m., Ms. Lindley was moved from the padded cell to another jail cell that had running water, a toilet, and a shower,

although the parties differ as to the reason for moving her. That same day, Defendant Sinnett spoke with Carol Crews, who was the City of Ada court clerk, and discussed releasing Ms. Lindley to Hughes County (where there was a question of another warrant) or issuing an Emergency Order of Detention ("EOD"), but he was told that she needed to appear before the court. Although he inquired about an EOD on May 14, Defendant Sinnett testified at his deposition that he did not believe she should have been EOD'd because intoxication was an insufficient reason.

Throughout the entire time Ms. Lindley was held at the Jail, she appeared intoxicated to Jail staff, and her condition appeared to stay about the same for most of the time she was at the Jail. She moved around almost constantly and was in a state of undress, or completely naked, for most of the time she was at the Jail. Moreover, she was not booked into the Jail or taken before a judge, and staff believed her condition was such that she should not be released outright or on bond. In the over fifty hours of video footage, and as recorded by jail logs, staff members checked on inmates, and specifically Ms. Lindley, on a regular basis. These checks included visual checks.

When asked about other intoxicated persons that staff members had observed at the Jail, the staff members testified that several intoxicated persons had engaged in behavior similar to that of Ms. Lindley, including rolling on the floor and getting feces on themselves, and that these persons had not suffered serious medical injuries or death. Additionally, five Jail employees testified that they had repeatedly seen detainees who would remain intoxicated for more than two days and up to at least five days, testifying

generally that these detainees would eventually sober up and go to sleep and that they were not taken before a judge until they had sobered up.

Two days after Ms. Lindley's arrest, on May 15, 2014 shortly before 8:00 a.m., Defendant Sinnett and Nurse Black entered the jail cell containing Ms. Lindley to check her out. She was noted to have blood in her buttocks area. Defendant Sinnett requested another three female Jail employees to help Ms. Lindley get showered. Around this same time, Defendant Sinnett again called someone with the City of Ada and informed them that Ms. Lindley's condition had not changed and that she needed to be released with an EOD or sent to the hospital. At that time, Defendant Sinnett was told to release Ms. Lindley, so he instructed another jailer to get her ready to go to the hospital. Upon the three female employees entering her cell to help, Ms. Lindley was found on the cell floor, her legs were purple, and they were not sure if she was breathing. Defendant Sinnett and other Jail employees began administering first aid and CPR, while other staff members requested an ambulance. CPR was performed for three to four minutes. Staff also attempted a defibrillator, but there was no shockable rhythm. Paramedics arrived at approximately 8:20 a.m., provided medical attention, and took her to the hospital.

The Sheriff, Defendant John Christian, was not aware of Ms. Lindley's presence at the Jail until this time, when he was called and informed she was being taken to the hospital.

Ms. Lindley was pronounced dead at 9:26 a.m. Her cause of death was listed as acute methamphetamine toxicity sequela. *See* Docket No. 243, Ex. 10.

## IV. Analysis

Defendant Sinnett asserts that he is entitled to summary judgment because there is no evidence that he had direct involvement in any violation of Ms. Lindley's constitutional rights, and that he is entitled to qualified immunity. Defendant Christian asserts that he is entitled to summary judgment because none of the Jail employees, including Defendant Sinnett, violated Ms. Lindley's constitutional rights, and furthermore, that no policy, practice, or custom at the jail caused a violation of her constitutional rights; that there is insufficient evidence of any alleged failure to supervise; and that Plaintiffs cannot identify a specific deficiency related to failure to train. In response, Plaintiffs contend that Defendant Sinnett's actions, along with the actions of Nurse Jeffrey Black and four other jailers, *did* constitute an underlying constitutional violation; that certain policies of deferring to the City of Ada regarding the need for medical care for inmates, and the policy to hold detainees indefinitely until they sober up, violated Ms. Lindley's constitutional right to medical care; and that lack of training contributed to the constitutional violation. For the reasons set forth below, the Court finds that Defendant Sinnett is entitled to qualified immunity, while Defendant Christian, in his official capacity, is not entitled to summary judgment.

### A. Defendant Sinnett Is Entitled To Qualified Immunity.

The Court first addresses whether Defendant Sinnett is entitled to qualified immunity. *See Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. May 12,

2014) ("Additional steps are taken when a summary judgment motion raises a defense of qualified immunity."), *citing Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right *and* (2) the constitutional right was clearly established. The court may consider either of these prongs before the other 'in light of the circumstances in the particular case at hand.'" *Cunningham*, 2014 WL 12791236, at *4, *quoting Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (emphasis added). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017), *quoting Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is

entitled to judgment as a matter of law." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (internal quotation marks omitted).

"Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992). As such, the Plaintiffs' allegation of failure to provide medical care "must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)." *Frohmader*, 958 F.2d at 1028, *quoting Martin v. Board of County Commissioners of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990). *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to §1983.") (internal citations and quotations omitted). Even under the Eighth Amendment, however, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and **medical care**, and must 'take reasonable measures to guaranty the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (emphasis added), *quoting Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). "Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985), *citing Estelle v. Gamble*, 429 U.S. 97 (1976).

> Deliberate indifference involves both an objective and a subjective component. The former is met if the deprivation is sufficiently serious – that is, if it is one that has been diagnosed by a physician as mandating treatment

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The latter is satisfied if an officer knows of and disregards an excessive risk to a detainee's health or safety. Essentially, the officer must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Olsen*, 312 F.3d at 1315 (internal citations and quotations omitted). *See also Martinez*, 563 F.3d at 1088 ("The test for deliberate indifference is both objective and subjective."), *citing Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. . . . The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Here, the latter type of deliberate indifference is at issue with regard to Defendant Sinnett.

The Tenth Circuit has explained that the objective component is based on the harm claimed by the Plaintiff, and "whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause.'" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005), *quoting Farmer*, 511 U.S. at 834. "Once the prisoner selects the harm, however, the focus of the objective prong should be solely on whether that harm is sufficiently serious." *Mata*, 427 F.3d at 753. In this case, the Plaintiffs claim the harm is death by acute intoxication, which the Court finds is of sufficient seriousness to satisfy this objective component. *See, e. g., Martinez*, 563 F.3d at 1089 ("We agree with Martinez and the district court that 'the ultimate harm to Mr. Ginn, that is, his heart attack

and death, was, without doubt, sufficiently serious to meet the objective component necessary to implicate the Fourteenth Amendment.").

"The subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must 'consciously disregard' a substantial risk of serious harm.' And '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.' The fact that a serious medical need was 'obvious' could be evidence of deliberate indifference, although a 'prison official may show that the obvious escaped him' and avoid liability." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006), *quoting Farmer*, 511 U.S. at 837, 839, 842-843 & n. 8. As such, "the Tenth Circuit has recognized that conduct constituting deliberate indifference may arise in the form of 'a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition.'" *Welsh v. Bishop*, 2015 WL 1064155, at *4 (D. Colo. March 9, 2015), *quoting Self*, 439 F.3d at 1231, 1232 ("A claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious.").

Put another way, "the prisoner must show that the defendants knew [s]he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089, *quoting Callahan*, 471 F.3d at 1159. "Defendants will not be entitled to qualified immunity if the symptoms displayed by Plaintiff were obvious enough to warrant a finding that Defendants knew of the risk of a serious medical condition but disregarded that risk." *Marquez v. Board of County Commissioners Eddy*

-10-

*County*, 2012 WL 12895017, at *5 (D. N.M. Dec. 3, 2012). Accordingly, "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755 (collecting cases); *Winrow v. Stell*, 2015 WL 3645702, at *7 (W.D. Okla. March 5, 2015 ("Denying or delaying a prisoner's access to medical professionals capable of assessing or treating the prisoner's condition can establish the subjective component, particularly when unnecessary pain or a worsened condition results."). However, "[m]ere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference." *Casanova v. Ulibarri*, 2011 WL 13157058, at *6 (D.N.M. Sept. 1, 2011) (internal citations omitted). As such, "[t]he question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Martinez*, 563 F.3d at 1089, *quoting Mata*, 427 F.3d at 753. *See also Whiteman v. El Paso Criminal Justice Ctr.*, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011) ("[A] general awareness of the potential for harm is not enough; there must be a connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed."), *citing Martinez*, 563 F.3d at 1089 n.8.

Here, the Court is not convinced there is no evidence of deliberate indifference with regard to Ms. Lindley. In making this finding, the Court first notes that the fact that Ms. Lindley was not taken before a judge does not affect the requisite analysis in this case. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997) ("Whether the detainee has been taken before a magistrate judge or other judicial officer to determine the legality

of h[er] arrest is not material, the custodian's duty is the same in either event."). Furthermore, the parties are in agreement that Ms. Lindley was not provided a medical screening upon intake, which contradicts the Jail's written policy; however, there is no allegation that Defendant Sinnett had anything to do with this failure to screen Ms. Lindley upon her arrival. Nor is a violation of a Jail policy, even one required under Oklahoma state law, a per se constitutional violation. *Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir. 2003) ("It is well established, however, that a state's violation of its own laws does not create a claim under § 1983.").

The heart of the disagreement between the parties is whether the jailers, and specifically Defendant Sinnett, knew that Ms. Lindley needed medical care prior to the time that the ambulance was called on May 15, more than two days after her arrival at the Jail. *See Farmer*, 511 U.S. at 842-844 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. . . .[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so."). Upon her arrest by Officer Brian Engel and prior to being taken to the Jail, Ms. Lindley can be heard asking to be taken to the hospital on the recording from his body cam. In contrast, the approximately fifty hours of video from Ms. Lindley's time at the Jail do not have sound on them. Defendant Sinnett, as well as Jail employees Chloe Spatz, Clint Cooper, Melinda Shaffer, Chelsea Stout, Jeffrey Black, Brenda Brown, and Joni Walker all testified in their depositions that Ms. Lindley could be heard making noises like growling and mumbling, and that she continued to appear to be intoxicated most

of the time she was at the Jail, but that she did not ever request medical attention or to be taken to the hospital, and that they did not believe there was a need for medical attention until they called for it on May 15. Docket No. 230, Exs. 3, 4, 5, 6, 7, 9, 10, 11.

Defendant Sinnett specifically testified at his deposition that Ms. Lindley appeared to him to be high on some type of drug, that her appearance was average for a person high on drugs, and that he had seen people take four to five days to come down from drugs. *See* Docket No. 230, Ex. 4, pp. 11-12. When asked to describe her behavior, he characterized it as "High on drugs." *Id.*, p. 54. He further testified that he had asked her name but she did not tell him and that she "basically just had a growl to her. There was no speech." *Id.*, p. 13-14. He further stated that on the morning of May 15 when he first saw her lying on the floor and not moving around, he thought she was coming down from the drugs. *Id.*, pp. 14-15. In fact, many of the Jail employees testified that they had seen individuals act similarly to Ms. Lindley and had taken even longer to sober up, and that those others had sobered up without incident and certainly without death as the ultimate result. They further testified that they did not believe Ms. Lindley was in need of medical attention prior to the morning of May 15, and that none of those individuals had died.

Defendant Sinnett asserts that this case is therefore like the *Martinez* case, cited above. In *Martinez*, a detainee died of a heart attack a few hours after an arrest for public intoxication, and the custodial officers "knew [he] was drunk, too incoherent to be booked into jail, had difficulty walking, had not been medically screened, and was left alone in the receiving cell." *Martinez*, 563 F.3d at 1090. There, the Tenth Circuit granted qualified immunity to those officers because they "subjectively knew that Ginn was intoxicated, but

-13-

there is no evidence to show that anyone would have known that Ginn would face an imminent heart attack or death, much less that the individual county defendants subjectively knew that Ginn was at risk of heart attack or death." *Id.*

Plaintiffs at times seem to agree that Ms. Lindley could not communicate coherently, but also maintain that she was repeatedly asking to be taken to the hospital. In support of their argument that she did in fact repeatedly demand to be taken to the hospital, Plaintiffs proffer the testimony of Cassie Stewart, who was an inmate at the Jail during the same time as Ms. Lindley. Ms. Stewart testified at her deposition that she saw Ms. Lindley in the second cell (ostensibly on May 14) walking around, and on all fours, naked, and "begging for someone to help, that she needed to go to the hospital. She stated that she needed to go to the hospital." Her testimony further indicates that Defendant Sinnett heard Ms. Lindley making these pleas. Docket No. 243, Ex. 39, 34:1-4. This creates a fact question. Although Defendant Sinnett asserts that such testimony is inadmissible hearsay, *see, e. g.*, *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) ("[W]e . . . hold that Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment."), the Court finds that such testimony is not being offered to prove what Ms. Lindley was saying, but merely that she said it.

Plaintiffs thus counter that Defendant Sinnett knew of Ms. Lindley's intoxication from his own observations and that she was exhibiting more than symptoms of intoxication, and that she either declined in functioning or stayed the same as when she entered the Jail. In further support of their contention of deliberate indifference, Plaintiffs refer to

Defendant Sinnett's attempts on May 14, her second day at the Jail, to obtain an EOD from the City of Ada, and assert that he improperly deferred decisions on her medical care to the City of Ada. They say that this happened again on May 15 when he contacted the City of Ada for the second time regarding what to do with her. The Plaintiffs thus contend that this case is more like, *inter alia*, *Marquez v. Board of County Commissioners of Eddy County*, 543 Fed. Appx. 803, 807 (10th Cir. 2013), in which Mr. Marquez was pulled over after swerving on the road and denied drinking or drug use, but indicated he had taken an over-the-counter medication. He then failed a sobriety test because he could not balance or follow finger movements, and after two hours as a detainee he was medically screened and found to have a 104-degree temperature. He was ultimately diagnosed with West Nile virus but the delay in treatment caused permanent injury. 543 Fed. Appx. at 804-805. There, the Tenth Circuit affirmed the denial of qualified immunity. *Id.* at 807 ("In light of Mr. Marquez's unmistakable physical and mental deterioration, the lack of any indication that drugs or alcohol were the cause, and the failure of the Defendants to act despite numerous opportunities to seek medical attention (violating detention center policies in doing so), a jury could reasonably conclude that they were deliberately indifferent to Mr. Marquez's serious medical risk.").

Based on the precedent evidence, the Court finds that, seen in the light most favorable to the Plaintiffs, the evidence would support an inference of deliberate indifference on behalf of Defendant Sinnett where, as here, Ms. Lindley asked repeatedly for medical attention; showed symptoms of impairment for an unusual length of time; appeared to be in constant motion, including crawling on the floor and defecating on the

floor; and further appeared unaffected by her lack of clothing.  Furthermore, his repeated phone calls to the City of Ada regarding Ms. Lindley's condition create a fact question as to his deliberate indifference to her medical needs.

But even assuming *arguendo* that Defendant Sinnett was deliberately indifferent to Ms. Lindley's medical needs, the Plaintiff must establish that Defendant Sinnett's actions violated a clearly established constitutional right.  "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct 'by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [she] maintains.'"  *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016), *quoting Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).  However, "'clearly established law' should not be defined 'at a high level of generality.'"  *White*, 137 S. Ct. at 552, *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Instead, it "must be 'particularized' to the facts of the case.  Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Id.*, *quoting Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987).

In this Circuit, "[t]he right to custodial medical care is clearly established."  *Olsen*, 312 F.3d at 1315, *citing Estelle*, 429 U.S. at 106.  Moreover, "[i]t is the medical need, not the offense charged, that triggers a person's right to medical attention upon custodial arrest."  *Rife v. Oklahoma Dept. of Public Safety*, 2017 WL 2623868, at *3 (E.D. Okla. June 16, 2017) (slip op.) ("So, whether Mr. Rife was injured by the motorcycle accident – as defendant Jefferson should have known – or impaired from intoxication – as defendants

Wallis and Dale believed – his symptoms clearly established a right to medical attention during his transport to and detention at the McCurtain County Jail."), *reversed on other grounds in Rife v. Jefferson*, 2018 WL 3660248 (10th Cir. Aug. 2, 2018), *citing*, 439 F.3d at 1230-1231; *Garcia*, 768 F.2d at 307-308; *Barton v. Tabor*, 820 F.3d 958, 965-967 (10th Cir. 2016); and *Marquez v. Bd. of County Commissioners of Eddy County*, 2012 WL 12895017, at *7-8. However, in this case, the issue is not the administration of medical care upon Ms. Lindley's arrest, but the lack of medical care while she was at the Jail. More specifically, the issue is whether there is a constitutional requirement of a maximum time a person can be held for purposes of detoxification before they must be referred for physical or mental medical care. In this, the Court finds no clearly established law. *See, e. g.*, *Estate of Duke by and through Duke v. Gunnison County Sheriff's Office*, 2018 WL 582399, at *5 (D. Colo. Jan. 29, 2018) ("There is no doubt that the deputies perceived that Trey was intoxicated. But no case would have notified them of a constitutional requirement that they take Trey to an emergency room rather than to the detention center, or that they do more than what they did: conduct a DRE exam, allow him to use the restroom, make phone calls, and eat breakfast, and let him sleep off his intoxication while monitoring him periodically."), and *Montano v. Orange County*, 2015 WL 11110628, at *8 (E.D. Texas Jan. 21, 2015) ("In 2011, it was not clearly established that it was unlawful to hold a 'high' detainee in a detox cell for several days of observation. . . . [I]n October of 2011, neither the United States Supreme Court, nor the Fifth Circuit, nor *any other appellate court* had established a presumptive maximum time limit a person could be held for detoxification before being referred for medical or psychiatric treatment, nor had those courts ruled that

holding a person for five days for observation and detoxification was in and of itself unlawful.") (emphasis added). *See also Toler v. Troutt*, 631 Fed. Appx. 545, 547 (10th Cir. 2015) ("We disagree with the district court's framing of what had to be clearly established. In stating that deliberate indifference to an inmate's medical needs is a clearly established constitutional violation, the district court's parameters were overly broad. If such a general statement of the constitutional violation that must be clearly established were sufficient, qualified immunity would almost never be granted.").

Although there is evidence that would support an inference of deliberate indifference when seen in the light most favorable to the Plaintiff, there is no clearly established law that there is a constitutional requirement of a maximum time a person can be held for purposes of detoxification before they must be referred for physical or mental medical care. As such, the Court finds that Defendant Sinnett is entitled to qualified immunity.

### B. Sheriff Christian Is Not Entitled to Summary Judgment.

The Court now turns to Defendant Sheriff Christian's motion for summary judgment regarding the Plaintiffs' official-capacity claims against him. An official capacity suit against an individual under § 1983 is "another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). *See also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) ("Under *Monell* [*v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978)], a local governmental unity such as a municipality or a county, like Tulsa County, 'is a 'person' subject to § 1983 liability,' and a 'suit against Sheriff [Glanz] in his official capacity as sheriff is the equivalent of a

suit against [Tulsa] County.'"), *quoting McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) and *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999). Moreover, "a finding of qualified immunity does not shelter a municipality from liability." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("When a finding of qualified immunity is predicated on the basis that the law is not clearly established, it is indeed correct that 'there is nothing anomalous about allowing 'a suit against a municipality] to proceed when immunity shields the individual defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred.'"), *quoting Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 697 (10th Cir. 1988).

This type of claim further "requires the plaintiff [to] prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Cox*, 800 F.3d at 125 (internal quotations omitted). "Thus, a municipal entity may be held liable only for an act it officially sanctioned or for the actions of an official with policymaking authority. An official policy can be shown through an official decision or statement or through 'the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Goss v. Board of County Commissioners of Creek County*, 645 Fed. Appx. 785, 789 (10th Cir. 2016), *quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-123, 127 (1988). *See also Yarbrough v. City of Kingfisher*, 153 F.3d 730, 1998 WL 427122, at *3 (10th Cir. July 14, 1988) (unpublished Table Opinion) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the

municipal action and the deprivation of federal rights."), *quoting Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Defendant Christian asserts that the booking process and inmate monitoring practices did not cause a violation of Ms. Lindley's constitutional rights, and that any violations of the Oklahoma Jail Standards are not in themselves constitutional violations. Plaintiffs argue that the Jail impermissibly deferred to the City of Ada in determining whether the claimant should be transferred for medical treatment, and that the jailers were impermissibly holding people anywhere from three days up to a week and half while waiting for someone to detox without providing medical care.

As to the Sheriff, the Plaintiffs were required to "show a genuine issue as to whether the employees who violated [Ms. Lindley's] rights were acting pursuant to an official municipal policy." *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 592 (10th Cir. 1999). The Court finds that the Plaintiffs *have* provided evidence raising a genuine issue as to whether the Jail employees were acting pursuant to an official policy. Nearly all of the jail employees deposed, including Defendant Sinnett and Defendant Christian, testified that the practice at the Jail was to leave arrestees in the Jail indefinitely until they "sobered up," which they testified had taken up to a week and a half[2] with other individuals, and more commonly up to five days. *See* Docket No. 230, Ex. 23, p. 41, and Docket No. 243, Exs. 5, pp. 35-36; 6, pp. 26-27, 104; 9, p. 12; 25, p. 24; 27, p. 32; and 36,

---

[2] In fact, Sheriff Christian himself testified at his deposition that there were others at the Jail "if I went back and . . . thought about it, that we've had in there for *days on end*." *See* Docket No. 243, Ex. 5, p. 18 (emphasis added).

p. 45.  This practice likewise did not require that such intoxicated individuals, who could not even be booked into the Jail, be examined by the Jail nurse.  While Defendant Christian concedes that this is the custom, *see* Docket No. 252, p. 13, he nevertheless asserts that there was no evidence that any inmate had died or suffered a serious medical need as a result of that custom.  This, of course, ignores Ms. Lindley's death, and the Jail's policy of inaction arguably contributed to Ms. Lindley's death.  *See Montano v. Orange County, Texas*, 842 F.3d 865, 879 (5th Cir. 2016) ("His death resulted from the staff's inaction, which was a direct result of the county's *de facto* policy.").

Having thus addressed the first prong of the analysis, the Court turns to the second prong, requiring a deprivation of constitutional rights.  The claim of constitutionally inadequate medical care, as discussed above, has both an objective and subjective component.  *See Martinez*, 563 F.3d at 1088 ("The test for deliberate indifference is both objective and subjective."), *citing Callahan*, 471 F.3d at 1159.  The Court has previously found that the Plaintiffs have satisfied the objective component, and Defendant Christian has agreed that Plaintiffs have done so for purposes of this motion.  *See* Docket No. 227, p. 21.  The Court has likewise previously found that, in the light most favorable to the Plaintiff, the evidence would support an inference of deliberate indifference to Ms. Lindley's serious medical condition.  Accordingly, there is evidence of a constitutional violation.

Plaintiffs also assert that the written policy at the Jail required that inmates and detainees could not be removed without a court order, restricting the ability of jailers to make decision as to an inmate's medical care.  In support, they refer to Defendant Sinnett's

calls to the City of Ada in an attempt to get an EOD, as well as Defendant's Christian's deposition testimony that deferring to the City is proper unless there is an immediate emergency. Defendant Christian contended in his deposition that he did not need prior approval from anyone to obtain medical care for an inmate, but it appears to be a fact question as to whether Defendant Sinnett and the other jailers were constrained by the Jail policy regarding removal of inmates without a court order. For all the reasons set forth above, Defendant Christian is therefore not entitled to summary judgment to the extent that the Plaintiffs' claims are predicated upon a policy, practice, or custom.

Plaintiffs likewise contend that Defendant Christian is liable in his official capacity for failure to train, asserting that there was no training on jail standards in either 2012 or 2013, and that the lack of training was a "moving force" behind the constitutional violation. "It is not enough, however, for [Plaintiffs] to show that there were general deficiencies in the county's training program for jailers. Rather, [they] must identify a specific deficiency in the county's training program closely related to [Ms. Lindley's] ultimate injury, and must prove that the deficiency in training actually caused [her] jailer to act with deliberate indifference to [her] safety." *Lopez*, 172 F.3d at 760. Here, Plaintiffs have not identified a closely-related specific deficiency in the training itself that caused Ms. Lindley's jailers to act with deliberate indifference. Accordingly, Defendant Christian is entitled to summary judgment to the extent that the Plaintiffs' claims are predicated upon allegations of failure to train.

Finally, although the Plaintiffs appeared to raise a claim for failure to supervise in the First Amended Complaint, they have not challenged Defendant Christian's assertion

that there is no evidence to find that Defendant's Christian's failure to supervise the Jail employees contributed to any alleged constitutional violation. As such, Defendant Christian is entitled to summary judgment to the extent that the Plaintiffs' claims are predicated upon allegations of failure to supervise.

In sum, Defendant Sinnett is entitled to qualified immunity, and Defendant Christian is entitled to summary judgment to the extent that the Plaintiffs' claims are predicated upon allegations of failure to train or failure to supervise. However, Defendant Christian, in his official capacity, is *not* entitled to summary judgment to the extent that the Plaintiffs' claims are predicated upon a policy, practice, or custom that contributed to a constitutional violation.

## CONCLUSION

Accordingly, the Court finds that the Defendant John Christian's Motion for Summary Judgment and Brief in Support [Docket No. 227] should be GRANTED IN PART AND DENIED IN PART as described above, and that Defendant Mike Sinnett's Motion for Summary Judgment and Brief in Support [Docket No. 229] is hereby GRANTED.

IT IS SO ORDERED this 7th day of September, 2018.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma